**SO ORDERED.**

**SIGNED this 12 day of August, 2010.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

IN RE:

KATHRYN A. RICHEY,                                    CHAPTER 7
                                                      CASE NO. 09-08981-8-RDD
    DEBTOR

**ORDER GRANTING IN PART AND DENYING IN PART
CHAPTER 7 TRUSTEE'S OBJECTION TO DEBTOR'S EXEMPTIONS**

The matter before the court is the chapter 7 trustee's objection to the debtor's claim of exemptions. A hearing was held in Greenville, North Carolina on July 1, 2010.

At the hearing, Robert Lewis, Jr. appeared on behalf of the debtor. George M. Oliver, the duly-appointed chapter 7 trustee, appeared in support of his motion. Kathryn Richey (the "Debtor") appeared at the hearing and testified in opposition to the trustee's motion to disallow the Debtor's claim of exemptions.

The Debtor filed an accelerated petition for relief under chapter 7 of the Bankruptcy Code on October 14, 2009. On October 29, 2009, the Debtor filed her required schedules and statements.

At the hearing, the Debtor stated that she hired a petition preparer,[1] John Hall ("Hall"), to

---

[1] A petition preparer is "a person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing." 11 U.S.C. § 110(a)(1). A document for filing is "a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under [title 11]." 11 U.S.C. § 110(a)(2).

complete her schedules as she could not afford an attorney to assist her. She further testified that she did not read the schedules before she filed them despite the fact that she signed them under penalty of perjury. The accuracy of Ms. Ritchey's schedules have been brought into question by the chapter 7 trustee. She contends that Hall is responsible for the failure to accurately complete her schedules, not her. However, Ms. Richey admitted that by signing the schedules under penalty of perjury, she acknowledged the information in the schedules was accurate.

The trustee objects to the Debtor's claim of the residential exemption pursuant to N.C.G.S. § 1C-1601(a)(1). The schedules listed property located at 304 River Bluffs Drive, New Bern, North Carolina ("River Bluffs Property") as being owned by the Debtor. The Debtor's schedules listed the value of the River Bluffs Property as $151,140.00. However, the Debtor testified at the hearing that prior to the filing of her petition, the property was marketed for sale with a listing price of $240,000.00. As of the date of the filing of her petition date, the advertised price had been reduced to $200,000.00. On her initial schedules, the Debtor listed secured claims against the River Bluffs Property in the amount of $193,695.00. No claim of equity or exemption was made as to the River Bluffs Property.

On November 13, 2009, approximately one month after the filing of her voluntary petition, the Debtor signed an offer to purchase agreement and contract for the sale of the River Bluffs Property for the purchase price of $200,000.00. This information was neither disclosed to the chapter 7 trustee nor to the Court. She failed to immediately amend Schedule G in order to provide disclosure of the real estate listing contract which was signed prior to the filing of the petition. The Debtor moved forward with her efforts to close on the sale of the River Bluffs Property without disclosure to the trustee or the Court.

On December 1, 2009, the Debtor failed to appear at the duly noticed Meeting of Creditors. That same day, the chapter 7 trustee telephoned the Debtor and informed her that she missed the Meeting of Creditors and it would need to be rescheduled. During that same telephone conversation, the chapter 7 trustee also informed Debtor that he had been made aware of her contract to sell the River Bluffs Property. He advised her against proceeding with the sale of her residence as it was property of the bankruptcy estate that was under the jurisdiction of the Bankruptcy Court. In response, the Debtor informed the chapter 7 trustee that she intended to dismiss her case and the telephone call was disconnected. The chapter 7 trustee attempted to call Ms. Richey back, but no one answered his calls. Subsequently, on December 2, 2009, the chapter 7 trustee sent a letter to the Debtor requesting certain documents regarding the contract to sell the River Bluffs Property. In that letter, the chapter 7 trustee informed the Debtor that the contract for sale of the property was invalid because of her bankruptcy filing and he strongly advised her not to proceed with the transaction.

However, the Debtor ignored the chapter 7 trustee and still sought to close the transaction. The chapter 7 trustee subsequently informed the closing attorney, Stephen Bell, that the River Bluffs Property was property of the bankruptcy estate that was under the jurisdiction of the Bankruptcy Court. He also informed Mr. Bell that the River Bluffs Property could not be sold without approval of the Bankruptcy Court. Mr. Bell voluntarily delayed the closing on the River Bluffs Property. Eventually, the chapter 7 trustee, after Court obtaining approval, sold the River Bluffs Property for $200,000.00.

On January 8, 2010, the chapter 7 trustee conducted the Meeting of Creditors. In addition, the Bankruptcy Administrator conducted a Rule 2004 examination of Ms. Richey. During these

3

examinations, the chapter 7 trustee discovered that Ms. Richey owned an interest in a time share in Orlando, Florida, which had not been disclosed in her schedules or to the Court.

Subsequently, on March 25, 2010 and with the assistance of newly hired counsel, the Debtor filed her amended schedules. Listed in those amendments were several bank accounts that the Debtor had failed to previously disclose. Further, the Debtor listed an indebtedness to Joachim Gruetzke, in the amount of $10,000.00 for a personal loan, that she failed to previously disclose. The chapter 7 trustee also discovered that the Debtor failed to list ownership of corporate stock and certain vehicles, that were shown on her amended schedules filed in March 2010.

Ms. Richey contends these omissions were not her fault. Instead, she asserts that the omissions and inconsistencies were the fault of Hall, the bankruptcy petition preparer. She claims that Hall represented himself as a bankruptcy specialist and that she followed his instructions regarding the disclosure of assets and liabilities.

With respect to the River Bluffs Property, the Debtor's amended schedules, filed on March 25, 2010, provide that the value of the property is $151,140.00, which is the same value listed in her original schedules. However, the amended schedules list secured claims totaling $179,000.00, including a claim of $116,000.00 to Navy Federal Credit Union and a claim of $63,000.00 to Marie Ham, the Debtor's mother. The Debtor claimed $18,500.00 for the residential exemption in the River Bluffs Property, which was the maximum amount allowed at the time she filed her petition, even though the Debtor's stated value of the property is less than the total amount of secured debt on the River Bluffs Property. When questioned about her continued use of the tax assessment valuation of $151,140.00, rather than the listing price of $240,000.00 or the sales price of $200,000.00, the Debtor stated Hall advised her to use the tax assessment value of the River Bluffs

4

Property and not the actual value. She testified that she followed his advice without question.[2] Therefore, she used that same value when amending her schedules despite having hired an attorney to assist her. The chapter 7 trustee objects to the allowance of an $18,500.00 residential exemption when there is no equity in the property value based on the Debtor's valuation and the total amount of the secured claims and her lack of good faith.

In addition to the willful nondisclosure and intentional lack of cooperation with the trustee previously described, the Debtor executed and recorded a deed of trust in favor of her mother, Marie Ham, for an antecedent debt one week prior to filing her petition. At the hearing, the Debtor testified that after her divorce, she borrowed $63,000.00 from her mother,[3] to pay her ex-husband his share of the equity in the River Bluffs Property. When questioned why the Debtor had granted her mother a deed of trust on the River Bluffs Property, the Debtor responded that she owed her mother that money and wanted to ensure the money was repaid.

Section 521 of the Bankruptcy Code lists the duties that every debtor shall perform. According to § 521(a)(1), a debtor shall file a list of creditors, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of financial affairs, among various other documents. Additionally, under Section 521(a)(3), a debtor is required to cooperate

---

[2] The Debtor is a licensed real estate broker and a North Carolina certified paralegal. She has been employed as a paralegal for a number of years in a real estate law firm and has performed freelance work as a title abstractor for attorneys and title companies. That experience in the real estate market would give her the ability to better value her property and know that the tax assessment did not accurately reflect the value of the property, especially when the Debtor had listed the property for sale at $240,000.00 and had signed a contract for sale at a price of $200,000.00.

[3] The money was originally borrowed by Marie Ham from a banking institution and then, given to the Debtor. Thus, Ms. Ham was obligated on the original note and not the Debtor.

with the appointed chapter 7 trustee. Cooperating with the trustee includes surrendering all property of the estate to the trustee. 11 U.S.C. § 541(a)(4).

Furthermore, Section 522(l) requires the debtor to file a list of property that she claims as exempt. Any party in interest may file an objection to the exemptions within thirty days after the meeting of creditors. *Taylor v. Freeland & Kronz, 503 U.S. 638, 112 S.Ct. 1644(1992), Fed. R. Bankr. P. 4003(b)*. Federal Rule of Bankruptcy Procedure 1009 provides that a debtor may amend a schedule at any time before the case is closed without court approval, but such amendments are not allowed where the debtor has acted in bad faith. *In re Shepard*, 2008 Bankr. LEXIS 2661 (Bankr. E.D.N.C. 2008) (holding that good faith is required to amend debtors' schedules).

Good faith does not require a debtor to be perfect, but it does require debtors to make complete and honest disclosures. In this case, the Debtor has engaged in an obvious pattern of deception by failing to disclose the fact that the River Bluffs Property was advertised for sale, repeatedly undervaluing that property, taking steps to close the sale without cooperating with the trustee, and willfully and deliberately taking actions where she failed to disclose all assets and liabilities on her schedules. Furthermore, all debtors have a duty to review their schedules to ensure their accuracy, including confirming that all property is properly listed and disclosed, and all creditors are properly scheduled. The Debtor, by her own admission, has failed to comply with such duties as required by the Bankruptcy Code.

Therefore, the Court finds that the Debtor has not acted in good faith in filing her schedules and claim of exemptions and has not cooperated with the chapter 7 trustee as required by the Bankruptcy Code. This Court finds that the Debtor's amended schedules listed the value of the River Bluffs Property at $151,140.00 and listed the secured liens on the property in the total amount of $179,000.00. Therefore, according to the amended schedules and exemptions, there is no claimed

6

equity in the River Bluffs Property and her claim of $18,500.00 for a residential exemption is **DISALLOWED.**[4]

With respect to the other exemptions claimed in the Debtor's amended schedules, at the hearing, she claimed an exemption in her 1997 Town and Country van. That exemption in the amount of $1,000.00 is **ALLOWED** as she is entitled to exempt $3,500.00 in one motor vehicle pursuant to N.C.G.S. § 1C-1601(a)(3).

As to her amended exemption under N.C.G.S. § 1C-1601(a)(2), since the Court has disallowed the residential exemption, the Debtor is entitled to claim an exemption up to $5,000.00. Therefore, the Debtor is **ALLOWED** to exempt $5,000.00 of the equity in the timeshare. However, the remaining value of $1,450.00 exceeds the $5,000.00 cap and cannot be claimed as exempt under N.C.G.S. § 1C-1601(a)(2) and is **DISALLOWED**.

Her proposed exemption as to any interest in shares of corporate stock is **DISALLOWED** as the value of the stock exceeds the $5,000.00 cap allowed under the miscellaneous or wild card exemption pursuant to N.C.G.S. § 1C-1601(a)(2).

As to personal property, the constitutional exemption in personal property as provided in Article X, § 1 of the Constitution of North Carolina is **DISALLOWED** as the Debtor in her amended claim of exemptions has claimed an "unknown" amount**.**

---

[4]The Bankruptcy Code limits a Debtor's exemptions to no more than what they claim on their schedules within the allowed exemption limits. See *Schwab v. Reilly*, 130 S.Ct. 2652 (2010). In this case, the Debtor claimed the full residential exemption of $18,500.00. However, the debt of $179,000.00 that encumbered the River Bluffs Property was in excess of the Debtor's claimed $151,140.00 value of the property. Therefore, there is no equity in the residential property for the Debtor to claim as exempt. Without any equity there is no value to claim as exempt, and Debtor's claim for exemption is deemed to be $0.00.

7

Lastly, the chapter 7 trustee's objection to the exemption for any earnings from the past 60 days under N.C.G.S. § 1-362 is overruled and the exemption of $400.00 is **ALLOWED.**

**SO ORDERED.**

**END OF DOCUMENT**